IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY, KANSAS

ELIZABETH BEDOLLA,

    Plaintiff,

v.                                          Case No.

EMH LOGISTICS, INC.,
A foreign corporation and
RONALD HARRIS, an
Individual

    Defendants,

## COMPLAINT

COMES NOW the Plaintiff, by and through counsel, Bradley A. Pistotnik and Jay Sizemore of Brad Pistotnik Law, P.A. and for her claims against the Defendants, alleges and states:

### COUNT I - GENERAL ALLEGATIONS OF FACTS

1. The Plaintiff is a resident of the State of Kansas and resides in Cowley County, Kansas.

2. Defendant, EMH Logistics, Inc. (EMH) is a motor carrier and trucking corporation with a principal place of business located at 1500 Midway Court, Suite W108, Elk Grove Village, Illinois 60007 and may be served through its registered agent, Hayrie Chaush and may be served at 1500 Midway Court, Suite W108, Elk Grove Village, Illinois 60007.

3. Defendant, Ronald Harris, (driver) is an individual who is a resident of the state of Missouri, and works as a driver for EMH. He may be served at his residence located at 11901 N. Illinois, Kansas City, MO 64156.

4. The police report identifies the owner of the 2011 Volvo commercial motor vehicle driven by the Defendants' driver as being owned by EMH.

5. This court has proper jurisdiction over the persons and subject matter.

6. This action is brought pursuant to 28 U.S.C. Section 1332(a) on the basis of diversity of citizenship. The matter is in excess of the sum of Seventy-Five Thousand and no/100 Dollars ($75,000.00) exclusive of interest and costs.

7. Ronald Harris, (driver) was operating in the course and scope of employment at the time and moment of this accident for Defendants EMH. For all allegations brought in this Petition, the actions and omissions of Driver are the actions and omissions of Defendants EMH under the doctrines of Respondeat Superior and Vicarious Liability.

8. Defendant EMH applied for motor carrier authority through the United States Department of Transportation to operate as a motor carrier under D.O.T. number 1508344.

9. Under the Federal Motor Carrier Safety Regulations (FMCSR), the 2011 Volvo, being operated by Defendants in this case, is a commercial motor vehicle.

10. On or about the 26th day of August, 2016 the plaintiff was riding with her husband and family in a vehicle being operated by Leopoldo Bedolla and they were traveling northbound on 54 Highway at or near the intersection of SW 100th in Butler County, Kansas, when the driver, Harris, wantonly, negligently and carelessly failed to stop or yield at an intersection at this location, thereby proximately causing an accident and injuries and damages to the plaintiff and her family members.

11. Trooper Grunder with the Kansas Highway Patrol issued the driver two citations to Defendants' driver under number 1205502 and 1205503 for failing to stop at this stop sign. Upon information and belief the driver pled guilty to these citations and thereby made an admission against interest.

12. The driver made a written statement stating, "I did not see any signs because of the sun.

When I did see the sign it was too late." This is another admission against interest.

13. The commercial motor vehicle being operated by Defendants and Driver was operating in interstate and intrastate commerce making it subject to the Federal Motor Carrier Safety Regulations issued under 49 C.F.R. Sections 381 through 399 which are enforceable pursuant to the Motor Carrier Act, PL 96-296, 1980 S 2245 and PL 96-296, July 1, 1980, 94 Stat 793.

14. The commercial motor vehicle owned and/or operated and leased by Defendant that was involved in this collision was dispatched, supervised, maintained, monitored, operated, and controlled by the department of operations, and the fleet management of Defendant EMH.

15. The driver was hired, qualified, supervised, and trained by Defendant EMH.

16. Defendant, EMH and the driver were operating as a motor carrier as defined by the Federal Motor Carrier Safety Regulations (FMCSR).

17. That at all times material hereto, Defendant EMH and their driver were operating under authority through the Department of Transportation (DOT) under their respective DOT licenses as set forth in preceding paragraphs above.

18. 49 C.F.R. § 390.3(e)(1) & (2) provide that every driver and employee shall be instructed regarding and shall comply with all applicable regulations contained in the FMCSR.

19. 49 C.F.R. § 390.4 provides that "motor carrier" means a for-hire motor carrier or a private motor carrier. That term includes a motor carrier's agents, officers, and representatives as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers.

20. Defendant and their driver were at all material times a "motor carrier" and an "employer" of its driver as defined as defined in 49 C.F.R. §382.107.

21. 49 U.S.C. § 14704(a)(2) provides that "A carrier . . . is liable for damages sustained by a person as a result of an action or omission of that carrier. . . in violation of this part." Defendants are the motor carrier in regard to the present accident.

22. 49 U.S.C. § 14101(a) provides that "a motor carrier shall provide safe and adequate service, equipment and facilities." Defendants and their driver negligently and wantonly failed to provide safe and adequate service which proximately caused the injury and damages to Plaintiffs.

23. The FMSCRs are located at 49 C.F.R. § 390 *et seq.* The FMCSRs and the MCA specifically under the section 40 C.F.R. § 391.1(a) and (b) states "(a) The rules in this part establish minimum qualifications for persons who drive commercial motor vehicles, as, for, or on behalf of motor carriers. The rules in this part **also establish minimum duties of motor carriers with respect to the qualification of drivers.** (b) A motor carrier who employs himself/herself as a driver must comply with both the rules in this part that apply to motor carriers and the rules in this part that apply to drivers." The FMCSR's set forth the applicable minimum industry standard of care including the minimum qualifications for drivers and the minimum duties for drivers under 49 C.F.R. § 391.1(a) & (b).

24. EMH has a systemic problem which is a habit, custom and a routine business practice of allowing unsafe and untrained drivers to drive unsafely with limited training, and to act carelessly, recklessly and wantonly and further by failing to train drivers on accident avoidance techniques and hazard perception techniques and defensive driving techniques by using the systems created by the Smith System or the J.J. Keller and Company systems on defensive driving. This is proven by clear and convincing evidence established by the attached CSA BASICs Company Safety Profile that was provided from a Freedom of

Information Act Request to the DOT and the FMCSA. The BASICSs' safety profile shows an unusually high and unsafe level of CSA and BASCICs (Attached as Exhibit A) with fatigued driving also known as hours-of-service violations at an unusually wanton and reckless rate going up to the 87th percentile making this company have Hours-of-Service violations that are worse than 86% of the commercial motor carriers in their category, showing:

| | |
|---|---|
| Hours-of Service Violations | 52nd Percentile - Ex. B bates page 0005 |
| Hours-of Service Violations | 56th Percentile - Ex. B bates page 0007 |
| Hours-of Service Violations | 68th Percentile - Ex. B bates page 0008 with alert |
| Hours-of Service Violations | 75th Percentile - Ex. B bates page 0009 with alert |
| Hours-of Service Violations | 77th Percentile - Ex. B bates page 0010 with alert |
| Hours-of Service Violations | 76th Percentile - Ex. B bates page 0011 with alert |
| Hours-of Service Violations | 81st Percentile - Ex. B bates page 0012 with alert |
| Hours-of Service Violations | 86th Percentile - Ex. B bates page 0013 with alert |
| Hours-of Service Violations | 85th Percentile - Ex. B bates page 0014 with alert |
| Hours-of Service Violations | 87th Percentile - Ex. B bates page 0015 with alert |
| Hours-of Service Violations | 84th Percentile - Ex. B bates page 0016 with alert |
| Hours-of Service Violations | 84th Percentile - Ex. B bates page 0017 with alert |
| Hours-of Service Violations | 86th Percentile - Ex. B bates page 0018 with alert |
| Hours-of Service Violations | 86th Percentile - Ex. B bates page 0019 with alert |

25. The motor carrier was given a warning letter on or about November 10, 2016 from the DOT and FMCSA, stating, "Specifically, our records show significant noncompliance in the areas of hours-of-service compliance. This warning letter formally notifies you of these safety

performance and compliance problems. We are bringing the safety deficiencies to your attention so that you can take corrective action." (See attached **Exhibit B for Warning Letter dated November 10, 2016**)

## COUNT II - THE FEDERAL MOTOR CARRIER SAFETY REGULATIONS SET FORTH THE APPLICABLE MINIMUM INDUSTRY STANDARD OF CARE TO ESTABLISH NEGLIGENCE, LACK OF CARE, RECKLESS AND WANTON CONDUCT

26. The plaintiff re-alleges the allegations contained in paragraphs one (1) through twenty-five (25) above as if though fully set forth herein.

27. The allegations contained in this Complaint regarding the Federal Motor Carrier Safety Regulations (FMCSR) are set forth to establish that the Defendants did not comply with the industry standard of care and the minimum standards of care described under the FMCSR to establish the negligence of the Defendants.

28. The actions and omissions of the Defendant Motor Carrier and its driver, are the actions and omissions of Defendant, EMH, under the doctrines of Respondeat Superior and Vicarious Liability and upon information and belief, are negligent, careless, and wanton and include, but are not limited to:

    A. Failure to stop or yield for a stop sign;

    B. Inattentive operation of a commercial motor vehicle;

    C. Operation of a commercial motor vehicle while using a cellular phone, GPS, PDA, mapping or other message device;

    D. Speeding in excess of what was reasonable for the then existing conditions of a stop sign;

    E. Failure to comply with and follow the minimum standards of care and safety set forth in the Missouri Commercial Driver's License Manual; (**See Exhibit C);**

F. Upon information and belief operation of a commercial motor vehicle while fatigued and with hours-of-service violations;

G. Failure to yield the right-of-way;

H. Failure to keep a proper lookout;

I. Inattentive operation of a commercial motor vehicle;

J. Failure to exercise ordinary and reasonable care;

K. Failure to warn;

L. Failure to use sunglasses or other sun blocking devices to allow him to visibly scan the area to the front and sides of this approaching CMV;

M. Operation of a commercial motor vehicle in a wanton, reckless or careless manner;

N. Operation of a commercial motor vehicle without first ascertaining that movement can be safely made;

O. Operation of a commercial motor vehicle in a fatigued state;

P. Failing to immediately terminate the driver;

Q. Failing to immediately reprimand the driver;

R. Failing to retrain the driver shortly after this accident causing injuries;

S. Failing to conduct a post-accident preventability study;

T. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. §§ 381 through 399;

U. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 392.3 by operation of a commercial motor vehicle while the driver's ability or alertness is impaired;

V. Upon information and belief, driving in excess of the hours-of-service time which

led to fatigued driving under 49 C.F.R. § 395.1, §395.3 as well as having an inappropriate driver's record of duty status under 49 C.F.R. § 395.8.

W. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11(a) by operation of a commercial motor vehicle when the driver is not properly qualified pursuant to this regulation;

X. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.113 by operating a commercial motor vehicle when the driver does not possess and demonstrate the safe driving skills required by this regulation;

Y. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.111 by operating a commercial motor vehicle when the driver did not have sufficient basic knowledge of safe operating regulations, including the effects of fatigue, safety systems knowledge, basic knowledge of basic control maneuvers, and basic information on hazard perception and when and how to make emergency maneuvers;

Z. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 383.110 by operation of a commercial motor vehicle without the knowledge and skills necessary to operate the same safely;

AA. For failing to meet the minimum duties and industry standards set forth under 49 C.F.R. § 390.11 by failing to observe and follow the FMCSR;

BB. For failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R § 383.110, 49 C.F.R. § 383.112, 49 C.F.R. 383.113 by failing to have an adequate safety management controls in place that would require and

        provide that the driver had the required skills safety management controls required under this regulation;

CC.    Upon information and belief using a cellular phone device, wireless communication device or other PDA device while operating a motor vehicle and talking, texting or looking at GPS directions, thereby violating K.S.A. 8-15,111 and causing the defendant driver to be distracted.

DD.    For other actions and omissions that will be supplemented after the receipt of full and complete discovery in this case.

## COUNT III - <u>NEGLIGENT HIRING, QUALIFICATION, TRAINING, SUPERVISION AND RETENTION CLAIMS</u>

29. The plaintiff re-alleges the allegations contained in paragraphs one (1) through twenty-eight (28) above as if though fully set forth herein.

30. Upon information and belief, Defendants are negligent, careless, wanton and reckless for failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.11 and 49 C.F.R. § 391.21, 49 C.F.R. § 391.23 by failing to properly qualify the driver, and by failing to properly make appropriate investigation and inquiries of the driver's background in the prior ten (10) year period and by failing to obtain the federally required information on the application for employment of their driver with appropriate ten (10) year background checks, criminal history checks and obtaining actual responses from prior employers;

31. Defendants are negligent, careless, wanton and reckless for failing to meet the minimum duties and industry standards of care set forth under 49 C.F.R. § 391.31 by failing to properly road test their driver;

32. Defendant EMH actions and omissions in hiring its driver, Driver establish negligent hiring,

retention, qualification, supervision, and training of the driver and supervisory managers above the driver;

33. Defendant EMH and their respective agents, employees and representatives were careless and negligent and wanton for negligent hiring, training, supervision, and retention of the driver and his supervisory personnel. Defendants negligently and/or wantonly hired unfit employees and agents and then failed to properly train, supervise, and monitor them and additionally retained employees and agents that were not performing their jobs properly or adequately. This includes, but is not limited to, the driver and his supervisory personnel. Defendant EMH has an obligation to use reasonable care in selecting and retaining their employees, agents, and independent contractors, and was negligent in hiring, selection, training, monitoring and retaining their employees, agents, and independent contractors, including, but not limited to driver. Defendant, EMH negligently and wantonly failed to use reasonable care in the hiring, selecting, training, monitoring, and retention of their employees and agents, including, but not limited to driver. Defendant, EMH knew or reasonably should have known that they were not hiring safe and competent employees and agents and negligently and wantonly violated their duty to hire only safe and competent employees. Defendant EMH knew or reasonably should have known that their employees and agents, including, but not limited to their driver, created and were an undue risk of harm to the Plaintiff, and negligently and wantonly failed to reprimand, retrain, or terminate their employees, agents, and independent contractors, including the driver and his supervisory personnel;

34. Defendant EMH's hiring, training, monitoring, supervision, and retention of unsafe and incompetent employees, agents, and independent contractors including the driver and his

supervisory personnel proximately caused the injuries to the Plaintiff and is clearly established by the violation history shown in the attached "Company Safety Profile; (See Exhibits A and B)

35. Defendant EMH failed to train the driver in the proper hazard communication signals, hazard perception, and other safe operating protocols;

36. Defendant EMH failed to have adequate safety management protocols in place;

37. Defendant EMH failed to properly create and implement a proper safety program that would require the driver to be adequately tested in written form to determine that he has appropriate defensive driving skills;

38. Defendant EMH, upon information and belief, failed to test the driver of their commercial motor vehicle for alcohol and drug consumption after this accident;

## COUNT IV - **RATIFICATION IS ESTABLISHED BY EXPRESS OR IMPLIED RATIFICATION**

39. The plaintiff re-alleges the allegations contained in paragraphs one (1) through thirty-eight (38) above as if though fully set forth herein.

40. Defendant, EMH has ratified all conduct of their driver either expressly or impliedly. Upon information and belief, the driver was not reprimanded, retrained, or terminated following this accident;

41. Ratification of the driver's conduct is further established by having a substantial violation history of hours-of-service violations with high BASICs scores in multiple categories of the CSA BASICs and through violation of the of the D.O.T. and FMCSR regulations which establishes that Defendants have a business pattern of conduct, custom, and habit of habitually violating the FMCSR; (See Exhibits A and B)

42. Ratification of the driver's conduct by having a history of hours-of-service violations on a company wide basis and failing to appropriately monitor the driver's hours of service as established by the attached warning letter from the DOT and FMCSA to EMH. (See Exhibit B)

## COUNT V - <u>INJURIES AND DAMAGES OF THE PLAINTIFF</u>

43. The plaintiff re-alleges the allegations contained in paragraphs one (1) through forty-one (41) above as if though fully set forth herein.

44. As a further direct and proximate result of the negligence and carelessness of the Defendant as aforesaid, Plaintiff has received injuries to her body, including, but not limited to: right clavicle and shoulder, right hip, right foot, neck, spine; she was diagnosed with a SLAP Type II tear in the rotator cuff in the right shoulder and underwent shoulder surgery; has underwent doctor supervised injections to the right ankle; developed radiculopathy radiating pain the right arm. The plaintiff has underwent pain management treatment, underwent physical therapy, has had to have medications to relieve pain and inflammation, and may have had aggravation to a pre-existing condition, and was otherwise injured. The Plaintiff has been damaged with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. In the future the Plaintiff will suffer with pain and suffering, mental anguish, loss of time, loss of enjoyment of life, medical expenses, economic loss, permanent disfigurement, and permanent disability. For the aforementioned damages, the Plaintiff has been damaged in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

45. The plaintiff additionally brings a claim for the loss of consortium suffered by her spouse.

WHEREFORE, the Plaintiff prays for judgment against Defendants for all damages allowed under Kansas law as actual compensatory damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), for costs herein, and for such other and further relief as the Court deems just and equitable.

**BRAD PISTOTNIK LAW, P.A.**

*s/ Bradley A. Pistotnik*
Bradley A. Pistotnik, #10626
Jay Sizemore, #20395
10111 E. 21st Street North, Suite 204
Wichita, KS 67206
316-684-4400/ Fax: 316-684-4405
brad@bradpistotniklaw.com
jay@bradpistotniklaw.com

## DEMAND FOR PRETRIAL CONFERENCE AND JURY TRIAL

COMES NOW the Plaintiff and demands a pretrial conference and a trial by jury of her peers in this matter.

*s/ Bradley A. Pistotnik*
Bradley A. Pistotnik, #10626

## DESIGNATION FOR PLACE OF TRIAL

COMES NOW the plaintiffs and designate Kansas City, Kansas as the place for trial in this matter since the defendant motor carrier and the defendant driver reside in the general Kansas City metropolitan area.

*s/ Bradley A. Pistotnik*
Bradley A. Pistotnik, #10626